understood according to their subject matter. The case principally relied on was one of voluntary bankruptcy involving a question which the court of the state was considered by the judge fully competent to decide. Here, on the contrary, the question is not fully cognizable under the jurisprudence or legislation of the state. The courts of the state certainly cannot, in all cases, enforce the adversary rights of the general creditors under an involuntary bankruptcy. The jurisdiction of the courts of the United States does not here depend upon the provision of the fortieth section of the present bankrupt law. This provision does, indeed, impliedly recognize the jurisdiction. But the previous enactments of other sections confer it. The provision of the fortieth section applies only to the primary stage of the proceedings. In that stage it dispenses with conditions and formalities which must otherwise have been fulfilled and observed. As against what parties other than the alleged bankrupt it has thus dispensed with them need not be considered, because the present proceedings in this court, if in proper form, cannot be irregular. Under the former English jurisdiction in bankruptcy, the chancellor would refuse to proceed otherwise than upon a bill, where he thought proper thus to afford an opportunity to appeal from his decision. The present bankrupt law of the United States gives to this court, in addition to its revisory jurisdiction, an auxiliary jurisdiction which may sometimes be so exercised as to secure the benefit of an appeal from the district court without the delay and expense. These courts have no supervisory jurisdiction over proceedings of the state courts. In each of the cases [Diggs v. Wolcott] 4 Cranch [8 U. S.] 179, and [Peck v. Jenness] 7 How. [48 U. S.] 612, 625, the court of the state had full cognizance of the subject of controversy, and of all its proper incidents; and in the case in 7 How. [48 U. S.] the subject was not peculiarly cognizable under proceedings in bankruptcy. In such a case to enjoin the plaintiff in the state court would, in effect, have been to enjoin that court, which the act of the 2d of March, 1793, had prohibited. But, in the present case, if the act of 1793 would otherwise have been applicable, the present bankrupt law would exclude its application so far as the present question is concerned. The state court cannot be enjoined; but the litigant in it may be restrained from doing what would frustrate or directly impede the jurisdiction expressly conferred by the bankrupt act.

The jurisdiction having thus been established, the argument of the motion to dissolve the injunction was heard in the circuit court, on bill and answer, by the district judge sitting alone. He refused to dissolve the injunction, but modified it in a manner which does not concern the question of jurisdiction [so as to save the lien of the de-

fendant when the goods should be sold and the money realized].[2] The injunction, thus modified, continues in force. He said, as to the jurisdiction, that although he had exercised it very cautiously, and would continue to do so, he had never doubted its existence, and that he had asked the attendance of the circuit judge merely in order that any doubts of others might be quieted.

## Case No. 7,077.
### IRVING v. SUTTON.
[1 Cranch, C. C. 567.] [1]

Circuit Court, District of Columbia. July Term, 1809.

N. Herbert, for defendant,

THE COURT said the rejoinder was bad, and rendered judgment for the plaintiff on the demurrer.

## Case No. 7,078.
### IRVING v. SUTTON.
[1 Cranch, C. C. 575.] [1]

Circuit Court, District of Columbia. Nov. Term, 1809.

N. Herbert, for defendant,

[2] [From 7 Am. Law Reg. (N. S.) 209.]
[1] [Reported by Hon. William Cranch, Chief Judge.]